IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANDREW STUART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19-CV-369 |
| | ) | |
| CHURN LLC and VAN LEEUWEN ICE CREAM LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Andrew Stuart has sued his former employers, Van Leeuwen Ice Cream LLC and Churn LLC, contending they breached his employment agreement and committed various torts and statutory violations. The defendants seek dismissal based on lack of personal jurisdiction. Because Mr. Stuart has made a prima facie showing that (*i*) the defendants purposefully availed themselves of the privilege of conducting activities in the forum State, (*ii*) that Mr. Stuart's claims arise out of those activities, and (*iii*) that the exercise of personal jurisdiction would be constitutionally reasonable, the motion will be denied. His claims for breach of contract and fraud, which the defendants do not otherwise challenge, will proceed. The Court will rule on the motion to dismiss Mr. Stuart's other claims for failure to state a claim by separate order issued as time permits.

### I. Background and Overview

Mr. Stuart alleges that Van Leeuwen's previous corporate iteration, Churn, hired him on July 12, 2017, under the terms of an employment agreement attached to his

complaint. *See* Doc. 2 at ¶¶ 3–5; Doc. 2-1.[1] Under this contract, Mr. Stuart was entitled to certain benefits when he reached one year of employment on July 12, 2018. Doc. 2 at ¶¶ 7–8. Van Leeuwen has refused to provide him these benefits. *Id.* at ¶¶ 10–14. He claims Van Leeuwen's actions constitute breach of contract, fraud, unjust enrichment, breach of fiduciary duty, and unfair and deceptive trade practices in violation of North Carolina law. *Id.* at ¶¶ 15–61.

Mr. Stuart filed his complaint in state court in February 2019 against Van Leeuwen and Churn. Doc. 2 at 1. Van Leeuwen removed the case to federal court based on diversity of citizenship, *see* Doc. 1, and now moves to dismiss the complaint for lack of personal jurisdiction. Docs. 10, 11.

## II. Personal Jurisdiction

The Supreme Court recognizes two types of personal jurisdiction: general (or "all-purpose") jurisdiction and specific (or "case-linked") jurisdiction. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1779–80 (2017). The parties agree that Van Leeuwen is not subject to general jurisdiction in North Carolina.[2] Accordingly, the Court will only consider whether Van Leeuwen is subject to specific jurisdiction.

---

[1] The parties agree that Churn redomesticated as Van Leeuwen in 2018 and that the two defendants are thus different corporate forms of the same entity. *See* Doc. 2 at ¶ 4; Doc. 11 at 2 & n.1; Doc. 10-1 at ¶ 3. The Court will refer to both defendants as "Van Leeuwen" unless otherwise noted. *See Precept Med. Prods., Inc. v. Klus,* 282 F. Supp. 2d 381, 383 n.1 (W.D.N.C. 2003).

[2] Van Leeuwen contends there is no general jurisdiction, *see* Doc. 11 at 6, and Mr. Stuart makes no argument to the contrary. *See* Doc. 15 at 5–9. Furthermore, neither defendant was incorporated or has a principal place of business in North Carolina and neither defendant could be considered "at home" here. *See, e.g., Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

A court has specific jurisdiction over a defendant that has "purposefully directed his activities at residents of the forum" and if the "litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985).[3] Out-of-state defendants are subject to the personal jurisdiction of a federal court only if both the forum state's long-arm statute and due process are satisfied. *E.g., Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). In North Carolina, these considerations are co-extensive. *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

To determine whether specific jurisdiction lies in the forum state, courts consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016); *accord Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). The plaintiff must prevail on all three prongs. *Perdue Foods*, 814 F.3d at 189.

The purposeful availment inquiry requires an evaluation of several factors, including: (*i*) whether the defendant maintains offices or agents in the forum state; (*ii*) whether the defendant owns property in the forum state; (*iii*) whether the defendant reached into the forum state to solicit or initiate business; (*iv*) whether the defendant

---

[3] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

3

deliberately engaged in significant or long-term business activities in the forum state; (*v*) whether the parties contractually agreed that the law of the forum state would govern disputes; (*vi*) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (*vii*) the nature, quality and extent of the parties' communications about the business being transacted; and (*viii*) whether the performance of contractual duties was to occur within the forum. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

"[A] contract with an out-of-state party does not always establish minimum contacts in the plaintiff's home forum, even when the dispute arises from the contract." *Protocol, LLC v. Henderson*, 18 F. Supp. 3d 689, 697–98 (M.D.N.C. 2014) *as amended* (May 15, 2014) (citing *Burger King*, 471 U.S. at 478). On the other hand, "physical presence in the forum state is not essential," *Perdue Foods*, 814 F.3d at 191, as "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King,* 471 U.S. at 476.

### III. Jurisdictional facts

Mr. Stuart has the burden of establishing personal jurisdiction by a preponderance of the evidence, but he need only make a prima facie showing absent an evidentiary hearing on the matter. *Carefirst*, 334 F.3d at 396. At this stage, "the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

4

Both parties have submitted affidavits in support of their positions. In large part, the parties either agree or have not offered contradicting evidence on facts presented. The parties dispute the reasons Mr. Stuart worked remotely from North Carolina and the extent to which Van Leeuwen expected Mr. Stuart to conduct business on its behalf in North Carolina. The Court has drawn all reasonable inferences and resolved all conflicting facts in the affidavits in Mr. Stuart's favor, *see Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp.*, 737 F. Supp. 925, 926 (W.D. Va. 1990), and finds the following facts for the purposes of this motion only.

Neither Van Leeuwen nor its predecessor Churn were incorporated in North Carolina or have a principal place of business in North Carolina. Doc. 2 at ¶¶ 2, 4; Doc. 10-1 at ¶¶ 3–4. Van Leeuwen has no offices in North Carolina, is not registered to do business in North Carolina, does not maintain a registered agent in North Carolina, and does not own any real property or personal property in North Carolina. Doc. 10-1 at ¶ 6. Mr. Stuart was Van Leeuwen's only agent living in North Carolina or working from North Carolina. Doc. *Id.* at ¶ 7.

A recruiter operating in New York included Mr. Stuart within a pool of candidates presented to Van Leeuwen for the position of Eastern Regional Sales Manager. *Id.* at ¶ 8. Van Leeuwen reached out to Mr. Stuart, and Mr. Stuart travelled from North Carolina to New York to interview for the position. *Id.* at ¶ 9. All corporate actions by Van Leeuwen's officers and agents to establish the terms of Mr. Stuart's employment and to end Mr. Stuart's employment took place in New York. *Id.* at ¶¶ 12–13.

Van Leeuwen offered the position to Mr. Stuart in an email from the recruiter, which attached an offer letter addressed to him in North Carolina, Doc. 2-1; he accepted by signing without further negotiation, making this letter his employment contract. *Id.* at ¶ 10; Doc. 15-1 at ¶ 3.[4] The contract has a New York choice of law provision but no venue provision. Doc. 2-1 at 4. It describes Mr. Stuart's position as "Director of Sales-East," *id.* at 1, and he was required and expected to cover sales in the eastern United States. Doc. 15-1 at ¶ 5.

There is no evidence that the parties had any discussions about where Mr. Stuart would have a physical office. Mr. Stuart never asked to work from home and Van Leeuwen did not offer to provide him with an office in New York or elsewhere. Doc. 15-1 at ¶ 5. Van Leeuwen agreed to provide Mr. Stuart with an allowance for travel and phone costs while working remotely, Doc. 2-1 at 2, and later paid a portion of his internet costs. Doc. 15-1 at ¶ 7. After Mr. Stuart accepted Van Leeuwen's offer, he and a Van Leeuwen human resources employee talked over the phone about the benefits available to him in North Carolina, and Van Leeuwen mailed his paychecks to North Carolina until it moved to direct deposit to his North Carolina bank account. *Id.* at ¶¶ 4, 6.

Both parties knew and assumed Mr. Stuart would spend most of his time travelling to further his sales work and that he would otherwise work out of his home in North

---

[4] The parties agree that they executed Mr. Stuart's employment contract in North Carolina, where Mr. Stuart signed it, *see* Doc. 16 at 3 n.2; Doc. 15 at 2, but this fact has limited relevance to the personal jurisdiction analysis. *See Protocol*, 18 F. Supp. 3d at 700 n.8 (stating the determination of where parties executed a contract "does not tangibly impact the personal jurisdiction analysis").

6

Carolina or at any other location convenient to him. *See id.* at ¶ 5. This arrangement was not for Mr. Stuart's convenience alone, as it meant Van Leeuwen did not have to provide him with an office.

Mr. Stuart often worked remotely from his home as expected. He also conducted business on Van Leeuwen's behalf in North Carolina with the aim of furthering Van Leeuwen's goal "to have distribution in every state of the United States by the year 2020." Doc. 15-1 at ¶¶ 7–8. These activities include securing "broker coverage" to sell Van Leeuwen products in all states, including North Carolina, *id.* at ¶ 8, working with national distributors and grocers on contracts permitting the distribution or sale of Van Leeuwen products in North Carolina, *id.* at ¶¶ 9–10, 12, and conducting four meetings on Van Leeuwen's behalf in North Carolina. *Id.* at ¶ 11. Van Leeuwen was aware of this work, as Mr. Stuart communicated frequently with his colleagues in New York and Van Leeuwen mailed samples to his home needed for his meetings in the area. *Id.* at ¶ 13.

## IV. Analysis

The recent increase in employees working out of their homes at some distance from their employers' business locations has presented novel issues for courts considering personal jurisdiction. Neither the Supreme Court nor the Fourth Circuit appears to have addressed whether a defendant in one state with an employee working remotely from home may properly be sued where its employee resides. However, established case law instructs that the analysis is fact-specific and requires a close examination of the intended relationship between the parties.

In *Burger King*, the Supreme Court directed courts to consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to decide issues of personal jurisdiction arising out of business transactions. 471 U.S. at 479. In that case, the Supreme Court held that a single franchise agreement with a Florida franchisor provided a sufficient basis for personal jurisdiction in Florida over a Michigan franchisee where the franchise agreement established "a carefully structured 20–year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida." *Id.* at 480.

The Fourth Circuit recently distinguished *Burger King* to find no personal jurisdiction in Maryland over a Brazilian company based on a single contract because, *inter alia*, the contract did not establish a "series of continuing contacts" between the Maryland-based plaintiff and the defendant or "any ongoing collaboration" between the two; "[r]ather, it expressly prevents [the defendant] from doing business in Maryland." *Perdue Foods*, 814 F.3d at 190–91. In dicta, the Fourth Circuit noted that "if the parties had entered a contract that created a meaningful relationship with frequent communication, even if no [defendant] employee entered Maryland, personal jurisdiction might well lie in the federal district court in Maryland." *Id.* at 191.

Two North Carolina district courts have recently addressed personal jurisdiction over foreign companies employing workers remotely and have, on the facts presented, declined to exercise jurisdiction. *See Fields v. Sickle Cell Disease Ass'n of Am., Inc.*, No. 5:17-cv-482-FL, 2018 WL 4623645 (E.D.N.C. Sept. 26, 2018); *Wright v. Zacky & Sons Poultry, LLC*, 105 F. Supp. 3d 531 (M.D.N.C. 2015). In *Fields*, the court found no

8

personal jurisdiction in North Carolina over a Maryland-based defendant where the plaintiff "refused to accept the position with defendant unless she could work remotely" from her North Carolina home and the defendant agreed to accommodate her but required her to come to their Maryland offices five times per month. 2018 WL 4623645, at *1–2. The court determined that the "alleged activity in North Carolina is properly characterized as unilateral activity by the plaintiff, rather than acts by the defendant made with the intent to reach North Carolina." *Id.* at *4.

In *Wright*, the court found no personal jurisdiction in North Carolina over a California-based defendant that hired a North Carolina resident but required him to relocate to California within a year and gave him $20,000 to do so. 105 F. Supp. 3d at 534–35. Instead of relocating, the plaintiff used most of this money for weekend flights back to North Carolina. *Id.* at 535. Overall, the employer never expected a long-term relationship with an employee in North Carolina; to the contrary, the contract showed that the defendant "wanted [the plaintiff] out of North Carolina and in California." *Id.* at 540.

The facts in both *Fields* and *Wright* are quite different from the parties' intended relationship here. Mr. Stuart's employment contract says nothing about Mr. Stuart traveling to or relocating to New York as a requirement for his position. Van Leeuwen never offered him an office in New York, contemplated that he would work elsewhere, and facilitated his work from North Carolina by paying for his phone and internet expenses. These facts show Van Leeuwen anticipated a long-term and "meaningful relationship" with Mr. Stuart while he was in North Carolina. *See Perdue Foods*, 814 F.3d at 191.

In circumstances similar to these, "a substantial number of district courts . . . have chosen to exercise jurisdiction over defendants who employ individuals remotely in other states." *Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d 499, 506 (E.D. Ky. 2019) (collecting cases). For example, in *Winner v. Tryko Partners, LLC*, 333 F. Supp. 3d 250, 256, 264 (W.D.N.Y. 2018), the court exercised personal jurisdiction in New York over a New Jersey-based employer which hired the plaintiff to work from her New York home, provided her resources to do so, and enlisted her to represent it in business meetings in New York and to travel throughout the Northeast. Similarly, in *Hall* the court exercised personal jurisdiction over an Ohio-based defendant in Kentucky where it recruited the plaintiff to manage its Ohio store remotely from Kentucky and provided her with equipment to do so. 359 F. Supp. 3d at 503, 511. The court found the defendant had personally availed itself of doing business in Kentucky by hiring the plaintiff even though the plaintiff's work was entirely directed to its operations in Ohio and Georgia. *Id.* at 511. Finally, in *Ouellette v. True Penny People, LLC*, 352 F. Supp. 3d 144, 154 (D. Mass. 2018), the district court found the defendant had purposefully availed itself of doing business in Massachusetts because its "voluntary actions in the Commonwealth—entering into an employment contract with a Massachusetts resident that envisioned performance in the forum—certainly rendered suit in the forum foreseeable."

With this case law in mind, the Court now considers whether Van Leeuwen has purposefully availed itself of conducting business in North Carolina, whether Mr. Stuart's claims arise out of Van Leeuwen's contacts in the state, and whether the exercise of

personal jurisdiction over Van Leeuwen would be constitutionally reasonable. *Carefirst*, 334 F.3d at 397. Mr. Stuart has satisfied all three prongs here.

The relevant factors establish that Van Leeuwen has purposefully availed itself of doing business in North Carolina by employing Mr. Stuart here, by expecting him to work out of space he provides, which Van Leeuwen knows is in North Carolina, and by having him advance its business interests in this state. *See Consulting Eng'rs Corp.*, 561 F.3d at 278 (listing non-exclusive factors relevant to purposeful ailment). Van Leeuwen knowingly engaged in a long-term relationship with Mr. Stuart in North Carolina by hiring him while he resided here without requiring that he relocate to or travel to New York for his work and by reimbursing him for certain expenses needed to work remotely in North Carolina. Van Leeuwen expected Mr. Stuart to "cover sales in the eastern United States," expected him to expand their business, and knew that Mr. Stuart was working to expand their business to North Carolina and meeting with potential distributors here. These factors outweigh the countervailing facts that Van Leeuwen maintained no offices, agents other than Mr. Stuart, or property in North Carolina; that the parties agreed that New York law would govern disputes between the parties; and that Van Leeuwen worked through a recruiter in New York to hire Mr. Stuart and never sent agents to North Carolina during that process.

Second, the dispute here arises out of Van Leeuwen's North Carolina contact with Mr. Stuart related to his employment. Mr. Stuart worked on Van Leeuwen's behalf in North Carolina and Van Leeuwen paid Mr. Stuart in North Carolina and gave him an allowance for phone and internet, which they knew would be used in North Carolina.

The dispute in this case is over compensation and benefits which Van Leeuwen allegedly owes Mr. Stuart.

This is not a "compelling case" in which "the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. Courts in this circuit consider several factors relevant to reasonableness, including "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Consulting Eng'rs Corp*, 561 F.3d at 279. Mr. Stuart has an interest in obtaining convenient and effective relief and North Carolina has an interest in resolving issues of employment benefits for its residents. *See, e.g.*, *Park v. Am. Circuit Breaker Corp.*, No. 1:06CV00549, 2008 WL 4596234, at *8 (M.D.N.C. Oct. 14, 2008) (denying motion to transfer employment dispute where agreement was "performed in North Carolina and involved a North Carolina employee" because "North Carolina would also have an interest in the litigation").

While it may be somewhat inconvenient for Van Leeuwen to defend a suit in this Court, "the inconvenience [i]s not so grave as to offend constitutional due process principles." *Christian Sci.*, 259 F.3d at 217. This is a straightforward case, and there is no indication it is so complicated that Van Leeuwen employees will have to spend significant periods of time in North Carolina. The Supreme Court recognized over three decades ago that technological developments in "modern transportation and

communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity" and thus "it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Burger King*, 471 U.S. at 474.

Finally, this Court can—and has—applied New York law. *See, e.g., Park*, 2008 WL 4596234, at *8 (denying motion to transfer employment dispute because, *inter alia*, the court could "apply New York law as appropriate."); *P&L Dev., LLC v. Bionpharma, Inc.*, 367 F. Supp. 3d 421, 431–35 (M.D.N.C. 2019) (applying New York law); *Volvo Grp. N. Am., LLC v. Forja De Monterrey S.A. De C.V.*, No. 1:16-cv-114, 2017 WL 3288481, at *2–3 (M.D.N.C. June 1, 2017) (same); *Mendenhall v. Hanesbrands, Inc.*, 856 F. Supp. 2d 717, 724–26 (M.D.N.C. 2012) (same).

This lawsuit in North Carolina is not the result of "random," "fortuitous," or "attenuated" contacts by Van Leeuwen. *Burger King*, 471 U.S. at 475. The circumstances surrounding its hiring, employment, and compensation of Mr. Stuart and alleged denial of employment benefits to him shows conduct purposefully directed at North Carolina residents such that it could reasonably anticipate defending claims in this forum arising out of his employment. *See id.* at 476; *Hall*, 359 F. Supp. 3d at 511. The Court will deny the motion to dismiss for lack of personal jurisdiction.

V.     **Conclusion**

Van Leeuwen intended for Mr. Stuart to work remotely, provided him resources to do so in North Carolina, and supported his efforts to promote distribution in North Carolina. He worked for them out of his home in North Carolina for over one year. It is

13

constitutionally reasonable to require Van Leeuwen to come to court in a case over Mr. Stuart's compensation.

Van Leeuwen also asks this Court to dismiss Mr. Stuart's claims of unjust enrichment, breach of fiduciary duty, and unfair and deceptive trade practices for failure to state a claim upon which relief can be granted. The Court will rule on this aspect of the motion to dismiss as time permits. As Mr. Stuart's claims for breach of contract and fraud remain uncontested, there is no reason to delay the pretrial conference.

It is **ORDERED** that, to the extent the defendants' motion to dismiss, Doc. 10, is based on Federal Rule of Civil Procedure 12(b)(2), the motion is **DENIED** and to the extent the motion to dismiss is based on Rule 12(b)(6), it remains under advisement.

It is further **ORDERED** that the case is referred to the Magistrate Judge for scheduling of a Rule 16.1 pretrial conference. *See* Fed. R. Civ. P. 16(b); LR 16.1.

This the 3rd day of June, 2019.

_____
UNITED STATES DISTRICT JUDGE